## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA
CASE NO.

FANATICS, LLC,

        Plaintiff,

vs.

THE INDIVIDUAL, BUSINESS ENTITY,
OR UNINCORPORATED ASSOCIATION
d/b/a FANATICITY.COM,

        Defendant.

_____/

## COMPLAINT FOR INJUNCTIVE RELIEF AND DAMAGES

Plaintiff, Fanatics, LLC ("Plaintiff" or "Fanatics"), hereby sues Defendant, the Individual, Business Entity, or Unincorporated Association doing business as fanaticity.com (the "Defendant"). Defendant is promoting, offering for sale, selling, and/or distributing goods using counterfeits and confusingly similar imitations of Fanatics' trademarks within this district through the fully interactive commercial Internet website operating under the domain name set forth on Schedule "A" hereto (the "Subject Domain Name"). In support of its claims, Fanatics alleges as follows:

## NATURE OF THE CASE

1.      Fanatics is filing an action for federal trademark counterfeiting and infringement, false designation of origin, cybersquatting, common law unfair competition, and common law trademark infringement against Defendant, who is advertising, distributing, offering for sale, and/or selling goods using counterfeit and infringing trademarks that are exact copies of at least one of Fanatics' trademarks without authorization via the fully interactive commercial Internet website operating under the Subject Domain Name.

2.      Fanatics is a global leader in licensed sportswear and sports merchandise. For over fifteen years, Fanatics has operated the official e-commerce sites for certain sports leagues in the United States, including the NFL, MLB, NBA, and NHL, along with many professional and collegiate teams. Fanatics has invested deeply in technology and marketing to better serve sports fans and its business partners and has significantly increased e-commerce sales for all of its business relationships. Thanks to Fanatics' track record of success with its partners, its rights have consistently expanded, including the right to produce a broad range of apparel, such as jerseys and championship products. Fanatics sells sports team and league licensed consumer products using its federally registered trademarks at various retail stores and special events, and via its mobile apps and the Internet including, but not limited to, at www.fanatics.com.

3.      Like many other famous trademark owners, Fanatics suffers ongoing daily and sustained violations of its trademark rights at the hands of counterfeiters and infringers, such as Defendant herein, who operate various fully interactive commercial Internet websites. Specifically, Defendant is using counterfeits and infringements of Fanatics' famous name and the Fanatics trademarks to make its website appear more relevant and attractive to consumers shopping for genuine Fanatics products online.   In doing so, Defendant wrongfully reproduces and counterfeits Fanatics' federally registered trademarks at issue herein for the twin purposes of duping and confusing the consuming public and earning substantial profits. Defendant is engaged in its present counterfeiting and infringing activities with the knowledge and intent that Defendant's goods and/or services will be mistaken for the genuine high-quality goods and services offered for sale by Fanatics.

4.      By its actions, Defendant is causing harm to Fanatics and the consuming public by depriving Fanatics of its right to determine the way its trademarks are presented to the public

through merchandising; defrauding the public into thinking Defendant's goods and/or services are valuable, authorized goods and services of Fanatics; deceiving the public as to Fanatics' sponsorship of and/or association with Defendant's goods and/or services and its website; and wrongfully trading and capitalizing on Fanatics' reputation and goodwill and the commercial value of its trademarks. As a result, Fanatics requires the Court's intervention if any meaningful stop is to be put to Defendant's unlawful counterfeiting and infringing activities.

## JURISDICTION AND VENUE

5.     This is an action for injunctive relief and damages for federal trademark counterfeiting and infringement, false designation of origin, cybersquatting, common law unfair competition, and common law trademark infringement pursuant to 15 U.S.C. §§ 1114, 1116, 1125(a), and 1125(d), The All Writs Act, 28 U.S.C. § 1651(a), and Florida's common law. Accordingly, this Court has subject matter jurisdiction over this action pursuant to 15 U.S.C. § 1121 and 28 U.S.C. §§ 1331 and 1338. This Court has supplemental jurisdiction pursuant to 28 U.S.C. § 1367 over Fanatics' state law claims because those claims are so related to the federal claims that they form part of the same case or controversy.

6.     Defendant is subject to personal jurisdiction in this district, because it operates a commercial website accessible in this district and directs business activities towards consumers throughout the United States, including within the State of Florida. Defendant engages in the wrongful activities alleged herein through, at least, its fully interactive commercial website accessible and doing business in Florida and operating under the Subject Domain Name. Alternatively, based on its overall contacts with the United States, Defendant is subject to personal jurisdiction in this district pursuant to Federal Rule of Civil Procedure 4(k)(2) because (i)

Defendant is not subject to jurisdiction in any state's court of general jurisdiction; and (ii) exercising jurisdiction is consistent with the United States Constitution and laws.

7.      Venue is proper in this Court pursuant to 28 U.S.C. § 1391 since Defendant is, upon information and belief, a non-resident in the United States and engaged in infringing activities and causing harm within this district by advertising, offering to sell, and/or selling goods and/or services using counterfeits and infringements of Plaintiff's trademarks to consumers in this district.

## THE PLAINTIFF

8.      Fanatics is a limited liability company organized under the laws of the State of Delaware with its principal place of business in the United States located at 8100 Nations Way, Jacksonville, Florida, 32256. Fanatics has developed its brand as a leader in selling and manufacturing licensed sports merchandise. For over fifteen years, Fanatics has operated the official e-commerce sites for certain sports leagues in the United States, including the NFL, MLB, NBA, and NHL, along with many professional and collegiate teams. It has invested deeply in technology and marketing to better serve sports fans and its business partners and has significantly increased e-commerce sales for all of its business relationships. Thanks to Fanatics' track record of success with its partners, its rights have consistently expanded, including the right to produce a broad range of apparel such as jerseys and championship products. Fanatics sells sports team and league licensed consumer products on its websites using its federally registered trademarks identified below.

9.      Fanatics offers for sale and sells its trademarked goods and services within the State of Florida, including this district, and throughout the United States. Defendant, through the advertisement, offer to sell, and/or sale of goods that use the Fanatics Marks, is directly and

unfairly competing with Fanatics' economic interests in the United States, including in the State of Florida, and causing Fanatics irreparable harm within this jurisdiction.

10.     Like many other famous trademark owners, Fanatics suffers ongoing daily and sustained violations of its trademark rights at the hands of counterfeiters and infringers, such as Defendant herein, who wrongfully reproduce and counterfeit Fanatics' trademarks for the twin purposes of (i) duping and confusing the consuming public and (ii) earning substantial profits.

11.     To combat the harm caused by the actions of Defendant and others engaging in similar conduct, Fanatics expends significant resources in connection with trademark enforcement efforts. The exponential growth of counterfeiting over the Internet, including through online marketplace and social media platforms, has created an environment that requires companies in anti-counterfeiting cases to expend significant resources across a wide spectrum of efforts to protect both consumers and themselves from the confusion and the erosion of the goodwill embodied in their brands.

**THE DEFENDANT**

12.     Defendant is an individual, business entity of unknown makeup, or unincorporated association who, upon information and belief, resides and/or operates in a foreign jurisdiction or redistributes products from the same or similar sources in that location. Defendant has the capacity to be sued pursuant to Federal Rule of Civil Procedure 17(b). Defendant directs its business activities toward consumers throughout the United States, including within this district, through the operation of, at least, its interactive commercial Internet website existing under the Subject Domain Name.

13.     Defendant is directly and personally contributing to, inducing and engaging in the sale of goods using counterfeits of Fanatics' trademarks as alleged herein.

5

14.     Defendant is the past and present controlling force behind the operation of the Internet website operating under, at least, the Subject Domain Name.

15.     Defendant directly engages in unfair competition with Fanatics by advertising, offering for sale, and/or selling goods and/or services using counterfeits and infringements of one or more of Fanatics' trademarks to consumers within the United States and this district through at least the interactive commercial website operating under the Subject Domain Name, and any additional domains and websites not yet known to Fanatics. Defendant has purposefully directed some portion of its unlawful activities toward consumers in the State of Florida through the advertisement, offer to sell, and/or sale of goods and/or services using counterfeits and infringements of Fanatics' trademarks to consumers in the State.

16.     Defendant has registered, established, or purchased, and maintained its Subject Domain Name and the website operating thereunder. Defendant may have engaged in fraudulent conduct with respect to the registration of the Subject Domain Name by providing false and/or misleading information during the registration or maintenance process related to its Subject Domain Name. Defendant has anonymously registered and maintained its Subject Domain Name for the sole purpose of engaging in unlawful counterfeiting and/or infringing activities.

17.     Defendant will likely continue to register or acquire new domain names for the purpose of selling and/or offering for sale goods using counterfeit and confusingly similar imitations of Fanatics' trademarks unless permanently enjoined.

18.     Defendant's Subject Domain Name, and any other alias domain or e-commerce store names used in connection with the sale of goods and/or services using counterfeits and infringements of one or more of Fanatics' trademarks, are essential components of Defendant's online activities and are one of the means by which Defendant furthers its counterfeiting and

6

infringement scheme and causes harm to Fanatics. Moreover, Defendant is using Fanatics' famous name and trademarks to drive online consumer traffic to its website operating under the Subject Domain Name, thereby increasing the value of the Subject Domain Name and decreasing the size and value of Fanatics' legitimate marketplace and intellectual property rights at Fanatics' expense.

<u>**COMMON FACTUAL ALLEGATIONS**</u>

<u>**Plaintiff's Trademark Rights**</u>

19.   Fanatics is the owner of all rights in and to the following trademarks, which are valid and registered on the Principal Register of the United States Patent and Trademark Office (collectively, the "Fanatics Marks"):

| Trademark | Registration Number | Registration Date | Classes/Goods |
|---|---|---|---|
|  | 5,188,153 | April 18, 2017 | IC 040 - Custom Manufacturing of Clothing and Apparel<br>IC 025 - Clothing, Namely, Jackets, Jerseys, Sweatshirts, Shirts, Pants, Headwear; Hats |
|  | 5,188,158 | April 18, 2017 | IC 040 - Custom Manufacturing of Clothing and Apparel<br>IC 025 - Clothing, Namely, Sweatshirts, Jackets, Jerseys, Shirts, Pants; Headwear; Hats |
|  | 5,210,047 | May 23, 2017 | IC 035 – On-line retail store services and retail store services featuring clothing, sporting goods, bedding, videos, printed sports publications, sports memorabilia, sports related and sports team branded clothing and merchandise; business marketing consulting services; customer services, namely, responding to customers inquiries for others in the field of sports related and sports team branded clothing and merchandise; product merchandising; order fulfillment |

| | | | |
|---|---|---|---|
| | | | services; retail store services, namely, business management and operation of retail stores for others; conducting, arranging, and organizing sports memorabilia shows for commercial purposes |
| Fanatics | 5,261,667 | August 8, 2017 | IC 035 – On-line retail store services and retail store services featuring clothing, sporting goods, bedding, videos, printed sports publications, sports memorabilia, sports related and sports team branded clothing and merchandise; business marketing consulting services; customer services, namely, responding to customers inquiries for others in the field of sports related and sports team branded clothing and merchandise; product merchandising; order fulfillment services; retail store services, namely, business management and operation of retail stores for others; conducting, arranging, and organizing sports memorabilia shows for commercial purposes |
| FANATICS | 5,285,287 | September 12, 2017 | IC 025 - Clothing, Namely, Jackets, Jerseys, Sweatshirts, Shirts, Pants; Headwear; Hats |

The Fanatics Marks are used in connection with the manufacture and distribution of high-quality goods and services in the categories identified above. True and correct copies of the Certificates of Registration for the Fanatics Marks are attached hereto as Composite Exhibit "1."

20.    The Fanatics Marks have been used in interstate commerce to identify and distinguish Fanatics' high-quality goods and services for an extended period.

21.     The Fanatics Marks have been used in commerce by Fanatics long prior in time to Defendant's use of copies of those marks. The Fanatics Marks have never been assigned or licensed to Defendant in this matter.

22.     The Fanatics Marks are symbols of Fanatics' quality, reputation, and goodwill and have never been abandoned. Fanatics has carefully monitored and policed the use of the Fanatics Marks.

23.     The Fanatics Marks are well-known and famous and have been for many years. Fanatics expends substantial resources developing, advertising, and otherwise promoting the Fanatics Marks. The Fanatics Marks qualify as famous marks as that term is used in 15 U.S.C. § 1125(c)(1).

24.     Further, Fanatics extensively uses, advertises, and promotes the Fanatics Marks in the United States in association with the sale of high-quality goods and services. Fanatics expends substantial resources promoting the Fanatics Marks and products and services using the Fanatics Marks.

25.     As a result of Fanatics' efforts, members of the consuming public readily identify merchandise sold using the Fanatics Marks, as being high-quality goods and services sponsored and approved by Fanatics.

26.     Accordingly, the Fanatics Marks have achieved secondary meaning among consumers as identifiers of high-quality goods and services.

27.     Genuine goods and services sold using the Fanatics Marks are widely legitimately advertised and promoted by Fanatics, its authorized distributors, and unrelated third parties via the Internet. Visibility on the Internet, particularly via Internet search engines and social media platforms, is important to Fanatics' overall marketing and consumer education efforts. Thus,

Fanatics expends significant monetary and other resources on Internet marketing and consumer education regarding its products and services, including search engine optimization ("SEO"), search engine marketing ("SEM"), and social media strategies. Those strategies allow Fanatics and its authorized retailers to educate consumers fairly and legitimately about the value associated with the Fanatics brand and the goods and services sold thereunder, and the problems associated with the counterfeiting of Fanatics' trademarks.

**<u>Defendant's Infringing Activities</u>**

28.     At all times relevant hereto, Defendant in this action has had full knowledge of Fanatics' ownership of the Fanatics Marks, including Fanatics' exclusive right to use and license such intellectual property and the goodwill associated therewith.

29.     Defendant is promoting, advertising, distributing, offering for sale, and/or selling goods in interstate commerce using counterfeit and confusingly similar imitations of one or more of the Fanatics Marks through, at least, the interactive commercial website operating under the Subject Domain Name. True and correct copies of the web pages reflecting samples of Defendant's Internet website operating under the Subject Domain Name displaying the items offered for sale using the Fanatics Marks are attached hereto as Composite Exhibit "2." Specifically, Defendant is using the Fanatics Marks to initially attract online consumers and drive them to Defendant's e-commerce store website operating under the Subject Domain Name. Defendant is using identical copies of, at least, one of the Fanatics Marks for different quality goods and/or services. Fanatics used the Fanatics Marks extensively and continuously before Defendant began using counterfeit and confusingly similar imitations of the Fanatics Marks.

30.     Defendant is actively using, promoting and otherwise advertising, distributing, offering for sale, and/or selling substantial quantities of its goods and/or services with the

knowledge and intent that such goods and/or services will be mistaken for the genuine high-quality goods and/or services offered for sale by Fanatics. Defendant has clear knowledge that it is without authority to use the Fanatics Marks. Defendant's actions are likely to cause confusion of consumers at the time of initial interest, sale, and in the post-sale setting, who will believe Defendant's goods and/or services offered through Defendant's e-commerce store website are genuine goods and/or services originating from, associated with, and/or approved by Fanatics.

31.     Defendant advertises its goods and/or services to the consuming public via at least the commercial website operating under the Subject Domain Name. In so doing, Defendant improperly and unlawfully uses one or more of the Fanatics Marks without Fanatics' permission.

32.     Defendant is, upon information and belief, employing and benefiting from similar advertising and marketing strategies based, in large measure, upon an unauthorized use of counterfeits and infringements of one or more of the Fanatics Marks. Specifically, Defendant is using counterfeits and infringements of Fanatics' famous name and the Fanatics Marks to make its website selling unauthorized goods and/or services appear more relevant and attractive to consumers searching for Fanatics goods and services online. Defendant is causing harm to Fanatics and the consuming public by (i) depriving Fanatics and other third parties of their right to fairly compete for space online and within search engine results and reducing the visibility of Fanatics' genuine goods and services on the World Wide Web, (ii) causing an overall degradation of the value of the goodwill associated with the Fanatics Marks, and (iii) increasing Fanatics' overall cost to market its goods and services and educate consumers about its brand via the Internet.

33.     Defendant is conducting and targeting its counterfeiting and infringing activities toward consumers and causing harm within this district and elsewhere throughout the United

States. Defendant is simply defrauding Fanatics and the consuming public for Defendant's own benefit.

34.     Defendant's use of the Fanatics Marks, including the promotion and advertisement, reproduction, distribution, sale, and/or offering for sale of its goods, is without Fanatics' consent or authorization.

35.     Defendant is engaging in the above-described unlawful counterfeiting and infringing activities knowingly and intentionally or with reckless disregard or willful blindness to Fanatics' rights for the purpose of trading on Fanatics' goodwill and reputation. If Defendant's intentional counterfeiting and infringing activities are not preliminarily and permanently enjoined by this Court, Fanatics and the consuming public will continue to be harmed.

36.     Defendant's above-identified infringing activities are likely to cause confusion, deception, and mistake in the minds of consumers before, during, and after the time of purchase. Moreover, Defendant's wrongful conduct is likely to create a false impression and deceive consumers into believing there is a connection or association between Fanatics' genuine goods and services and Defendant's website operating under the Subject Domain Name, which there is not.

37.     Moreover, Defendant has registered its Subject Domain Name using marks that are nearly identical and/or confusingly similar to at least one of the Fanatics Marks.

38.     Defendant does not have, nor has it ever had, the right or authority to use the Fanatics Marks for any purpose. Further, the Fanatics Marks have never been assigned or licensed to be used on Defendant's website operating under the Subject Domain Name.

39.     Defendant has provided false and/or misleading contact information when applying for the registration of the Subject Domain Name or has intentionally failed to maintain accurate contact information with respect to the registration of the Subject Domain Name.

40.     Defendant has never used its Subject Domain Name in connection with a bona fide offering of goods or services.

41.     Defendant has not made any bona fide non-commercial or fair use of the Fanatics Marks on the website accessible under its Subject Domain Name.

42.     Defendant has intentionally incorporated at least one of the Fanatics Marks in its Subject Domain Name to divert consumers looking for Fanatics' genuine website to its own Internet website for commercial gain.

43.     Fanatics has no adequate remedy at law.

44.     Fanatics is suffering irreparable injury because of Defendant's unauthorized and wrongful use of the Fanatics Marks. If Defendant's counterfeiting, infringing, and unfairly competitive activities are not permanently enjoined by this Court, Fanatics and the consuming public will continue to be harmed while Defendant wrongfully earns a substantial profit.

45.     The harm sustained by Fanatics has been directly and proximately caused by Defendant's wrongful reproduction, use, advertisement, promotion, offers to sell, and sale of its non-affiliated goods and/or services.

## COUNT I - TRADEMARK COUNTERFEITING AND INFRINGEMENT PURSUANT TO § 32 OF THE LANHAM ACT (15 U.S.C. § 1114)

46.     Fanatics hereby adopts and re-alleges the allegations set forth in Paragraphs 1 through 45 above.

47.     This is an action for trademark counterfeiting and infringement against Defendant based on its use of counterfeit and confusingly similar imitations of the Fanatics Marks in commerce in connection with the promotion, advertisement, distribution, offering for sale, and sale of its goods and/or services.

48.     Specifically, Defendant is promoting and otherwise advertising, selling, offering for sale, and/or distributing goods using counterfeits and/or infringements of one or more of the Fanatics Marks. Defendant is continuously infringing and inducing others to infringe the Fanatics Marks by using counterfeits and/or infringements of one or more of them in connection with the sale, offering for sale, distribution, and advertisement of its goods or services.

49.     Defendant's counterfeiting and infringing activities are likely to cause and are causing confusion, mistake, and deception among the consuming public as to the origin and quality of Defendant's website operating under the Subject Domain Name and its goods and/or services sold in connection therewith.

50.     Defendant's unlawful actions have caused and are continuing to cause unquantifiable and irreparable harm to Fanatics and are unjustly enriching Defendant with profits at Fanatics' expense.

51.     Defendant's above-described unlawful actions constitute counterfeiting and infringement of the Fanatics Marks in violation of Fanatics' rights under § 32 of the Lanham Act, 15 U.S.C. § 1114.

52.     Fanatics has suffered and will continue to suffer irreparable injury while Defendant is unjustly profiting due to Defendant's above-described activities if Defendant is not permanently enjoined.

## COUNT II - FALSE DESIGNATION OF ORIGIN
## PURSUANT TO § 43(a) OF THE LANHAM ACT (15 U.S.C. § 1125(a))

53.     Fanatics hereby adopts and re-alleges the allegations set forth in Paragraphs 1 through 45 above.

54.     Defendant has advertised and offered for sale, throughout the United States via the Internet, its goods and/or services using copies of one or more of the Fanatics Marks.

55.     In advertising, offering for sale, and/or selling its goods and/or services, Defendant uses copies of one or more of the Fanatics Marks that are virtually identical in appearance to the Fanatics Marks used by Fanatics in connection with the sale of Fanatics' genuine goods and/or services. Accordingly, Defendant's activities are likely to cause confusion in the trade and among consumers as to at least the origin or sponsorship of Defendant's goods and/or services via its unauthorized website operating under the Subject Domain Name.

56.     Defendant has used in connection with its advertisement, offer for sale, and/or sale of its goods and/or services, false designations of origin and false descriptions and representations, including words or other symbols and designs, which tend to falsely describe or represent such goods and/or services as being affiliated with, connected to, or sponsored by Fanatics, and has caused such goods and/or services to enter into commerce in the United States with full knowledge of the falsity of such designations of origin and such descriptions and representations, all to Fanatics' detriment.

57.     Defendant has authorized infringing uses of one or more of the Fanatics Marks in Defendant's advertisement and promotion of its goods and/or services.

58.     Additionally, Defendant is using counterfeits and infringements of one or more of the Fanatics Marks to unfairly compete with Fanatics and others for space within organic and paid search engine and social media results. Defendant is thereby (i) depriving Fanatics of valuable marketing and educational space online which would otherwise be available to Fanatics and (ii) reducing the visibility of Fanatics' genuine goods on the World Wide Web and across social media platforms.

59.     Defendant's above-described actions are in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

60.    Fanatics has no adequate remedy at law and has sustained injury caused by Defendant's conduct. Absent an entry of an injunction by this Court, Fanatics will continue to suffer irreparable injury to its goodwill and business reputation, while Defendant is unjustly profiting from those actions.

## COUNT III – CLAIM FOR RELIEF FOR CYBERSQUATTING PURSUANT TO § 43(d) OF THE LANHAM ACT (15 U.S.C. § 1125(d))

61.    Fanatics hereby adopts and re-alleges the allegations set forth in Paragraphs 1 through 45 above.

62.    At all times relevant hereto, Fanatics has been and still is the owner of the rights, title, and interest in and to the Fanatics Marks.

63.    Defendant has acted with the bad faith intent to profit from the Fanatics Marks and the goodwill associated with the Fanatics Marks by registering and using the Subject Domain Name.

64.    The Fanatics Marks were already distinctive and famous at the time Defendant registered its Subject Domain Name.

65.    Defendant has no intellectual property rights in or to the Fanatics Marks.

66.    The Subject Domain Name is identical to, confusingly similar to, or dilutive of at least one of the Fanatics Marks.

67.    Defendant's registration and maintenance of the Subject Domain Name is done with knowledge and constitutes a willful violation of Fanatics' rights in the Marks. At a minimum, the conduct of Defendant constitutes reckless disregard for and willful blindness to Fanatics' rights.

68.    Defendant's actions constitute cybersquatting in violation of §43(d) of the Lanham Act, 15 U.S.C. § 1125(d).

16

69.    Fanatics has no adequate remedy at law.

70.    Fanatics has suffered and will continue to suffer irreparable injury while Defendant is unjustly profiting due to the above-described activities if Defendant is not permanently enjoined.

## COUNT IV - COMMON LAW UNFAIR COMPETITION

71.    Fanatics hereby adopts and re-alleges the allegations set forth in Paragraphs 1 through 45 above.

72.    This is an action against Defendant based on its promotion, advertisement, distribution, offering for sale, and/or sale of goods and/or services using marks that are virtually identical to one or more of the Fanatics Marks in violation of Florida's common law of unfair competition.

73.    Specifically, Defendant is promoting and otherwise advertising, selling, offering for sale, and/or distributing goods and/or services using counterfeits and infringements of one or more of the Fanatics Marks. Defendant is also using counterfeits and infringements of one or more of the Fanatics Marks to unfairly compete with Fanatics and others for (i) space in search engine and social media results across an array of search terms and/or (ii) visibility on the World Wide Web.

74.    Defendant's infringing activities are likely to cause and are causing confusion, mistake, and deception among consumers as to the origin and quality of Defendant's e-commerce store website as a whole and all products sold thereon by its use of the Fanatics Marks.

75.    Fanatics has no adequate remedy at law and is suffering irreparable injury because of Defendant's actions, while Defendant is unjustly profiting from those actions.

## COUNT V - COMMON LAW TRADEMARK INFRINGEMENT

76.     Fanatics hereby adopts and re-alleges the allegations set forth in Paragraphs 1 through 45 above.

77.     Fanatics is the owner of all common law rights in and to the Fanatics Marks.

78.     This is an action for common law trademark infringement against Defendant based on its promotion, advertisement, offering for sale, and/or sale of unauthorized goods and/or services using one or more of the Fanatics Marks.

79.     Specifically, Defendant is promoting, and otherwise advertising, distributing, offering for sale, and/or selling goods and/or services using infringements of one or more of the Fanatics Marks.

80.     Defendant's infringing activities are likely to cause and are causing confusion, mistake, and deception among consumers as to the origin and quality of Defendant's goods and/or services using the Fanatics Marks.

81.     Fanatics has no adequate remedy at law and is suffering irreparable injury because of Defendant's actions, while Defendant is unjustly profiting from those actions.

## PRAYER FOR RELIEF

82.     WHEREFORE, Fanatics demands judgment on all Counts of this Complaint and an award of equitable relief and monetary relief against Defendant as follows:

a.      Entry of a permanent injunction pursuant to 15 U.S.C. § 1116, 28 U.S.C. § 1651(a), The All Writs Act, and Federal Rule of Civil Procedure 65 enjoining Defendant, its agents, representatives, servants, employees, and all those acting in concert or participation therewith, from manufacturing or causing to be manufactured, importing, advertising or promoting, distributing, selling or offering to sell its goods and/or services using the Fanatics

18

Marks; from infringing, counterfeiting, or copying the Fanatics Marks; from using the Fanatics Marks, or any mark or design similar thereto, in connection with the sale of any unauthorized goods or services; from using any logo, trade name, or trademark or design that may be calculated to falsely advertise the services or goods of Defendant as being sponsored by, authorized by, endorsed by, or in any way associated with Fanatics; from falsely representing itself as being connected with Fanatics, through sponsorship or association, or engaging in any act that is likely to falsely cause members of the trade and/or of the purchasing public to believe any goods or services of Defendant, are in any way endorsed by, approved by, and/or associated with Fanatics; from using any reproduction, counterfeit, infringement, copy, or colorable imitation of the Fanatics Marks in connection with the publicity, promotion, sale, or advertising of any goods or services sold by Defendant; from affixing, applying, annexing or using in connection with the sale of any goods or services, a false description or representation, including words or other symbols tending to falsely describe or represent Defendant's goods or services as being those of Fanatics, or in any way endorsed by Fanatics and from offering such goods and/or services in commerce; from engaging in search engine optimization strategies using colorable imitations of Fanatics' name or trademarks; and from otherwise unfairly competing with Fanatics.

   b. Entry of a permanent injunction pursuant to 28 U.S.C. § 1651(a), The All Writs Act, and the Court's inherent authority enjoining Defendant and all third parties with actual notice of an injunction issued by the Court from participating in, including providing financial services, technical services or other support to, Defendant in connection with the sale and distribution of non-genuine goods and/or services using counterfeits and/or infringements of the Fanatics Marks.

c.      Entry of an order pursuant to 28 U.S.C. § 1651(a), The All Writs Act, and the Court's inherent authority that, upon Fanatics' request, those acting in concert or participation with Defendant who have notice of the injunction, as service providers cease hosting, facilitating access to, or providing any supporting service to any and all domain names, including but not limited to the Subject Domain Name, and websites through which Defendant engages in the promotion, offering for sale and/or sale of goods or services using counterfeits and/or infringements of the Fanatics Marks.

d.      Entry of an order pursuant to 28 U.S.C. § 1651(a), The All Writs Act, and the Court's inherent authority, authorizing Fanatics to serve the injunction on any e-mail service provider with a request that the service provider permanently suspend the e-mail addresses that are or have been used by Defendant in connection with Defendant's promotion, offering for sale, and/or sale of goods or services using counterfeits and/or infringements of the Fanatics Marks.

e.      Entry of an order requiring, upon Fanatics' request, Defendant to request in writing permanent termination of any messaging services, Subject Domain Names, usernames, e-commerce stores, and social media accounts they own, operate, or control on any messaging service, e-commerce marketplaces, or social media websites.

f.      Entry of an order pursuant to 28 U.S.C § 1651(a), The All Writs Act, and the Court's inherent authority authorizing Fanatics to serve the injunction on the domain name's registrar(s) and/or the privacy protection service(s) for the Subject Domain Name to disclose to Fanatics the true identity and contact information for the registrant of the Subject Domain Name.

g.      Entry of an order pursuant to 15 U.S.C. § 1116, 28 U.S.C. § 1651(a), The All Writs Act, and the Court's inherent authority, that upon Fanatics' request, the Defendant and the top level domain (TLD) Registry for the Subject Domain Name, and any other domain names

used by Defendant, or its administrators, including backend registry operators or administrators, place the Subject Domain Name on Registry Hold status for the remainder of the registration period for the domain name, thus removing it from the TLD zone files which link the Subject Domain Name, and any other domain names being used and/or controlled by Defendant to engage in the business of marketing, offering to sell, and/or selling goods or services using counterfeits and/or infringements of the Fanatics Marks, to the IP addresses where the associated websites are hosted.

h.      Entry of an order pursuant to 28 U.S.C. § 1651(a), The All Writs Act, and the Court's inherent authority, canceling for the life of the current registration or, at Fanatics' election, transferring the Subject Domain Name and any other domain names used by Defendant to engage in its counterfeiting and/or infringement of the Fanatics Marks at issue to Fanatics' control so they may no longer be used for unlawful purposes.

i.      Entry of an order pursuant to 15 U.S.C. § 1116 and the Court's inherent authority, requiring Defendant, its agent(s) or assign(s), to assign all rights, title, and interest, to its Subject Domain Name and any other domain names used by Defendant to Fanatics and, if within five (5) days of entry of such order Defendant fails to make such an assignment, the Court order the act to be done by another person appointed by the Court at Defendant's expense, such as the Clerk of Court, pursuant to Federal Rule of Civil Procedure 70(a).

j.      Entry of an order pursuant to 15 U.S.C. § 1116 and the Court's inherent authority, requiring Defendant, its agent(s) or assign(s), to instruct in writing, all search engines to permanently delist or deindex the Subject Domain Name and any other domain names used by Defendant, and, if within five (5) days of entry of such order Defendant fails to make such a written instruction, the Court order the act to be done by another person appointed by the Court at

Defendant's expense, such as the Clerk of Court, pursuant to Federal Rule of Civil Procedure 70(a).

       k.     Entry of an order pursuant to 28 U.S.C. § 1651(a), The All Writs Act, and the Court's inherent authority authorizing Fanatics to request any Internet search engines or service providers referring or linking users to any URL of the Subject Domain Name, which are provided with notice of the order, to permanently disable, de-index or delist all URLs of the Subject Domain Name and/or permanently disable the references or links to all URLs of the Subject Domain Name used by Defendant to promote, offer for sale, and/or sell goods or services using counterfeits and/or infringements of the Fanatics Marks, based upon Defendant's unlawful activities being conducted via the Subject Domain Names as a whole and via any specific URLs identified by Fanatics.

       l.     Entry of an order requiring Defendant to account to and pay Fanatics for all profits earned from Defendant's trademark counterfeiting and infringing and unfairly competitive activities and that the profit award to Fanatics be trebled, as provided for under 15 U.S.C. § 1117, or that Fanatics be awarded statutory damages from Defendant in the amount of two million dollars ($2,000,000.00) per each counterfeit trademark used and product or service type offered for sale or sold, as provided by 15 U.S.C. § 1117(c)(2) of the Lanham Act.

       m.     Entry of an order requiring Defendant to account to and pay Fanatics for all profits resulting from Defendant's cybersquatting activities and that the profit award to Fanatics be trebled, as provided for under 15 U.S.C. § 1117, or that Fanatics be awarded statutory damages from Defendant in the amount of one hundred thousand dollars ($100,000.00) per cybersquatted domain name used as provided by 15 U.S.C. § 1117(d) of the Lanham Act.

n.    Entry of an award pursuant to 15 U.S.C. § 1117 (a) and (b) of Fanatics' costs and reasonable attorneys' fees and investigative fees, associated with bringing this action, including the cost of corrective advertising.

o.    Entry of an award of pre-judgment interest on the judgment amount.

p.    Entry of an order requiring Defendant, at Fanatics' request, to pay the cost necessary to correct any erroneous impression the consuming public may have received or derived concerning the nature, characteristics, or qualities of Defendant's products or services, including without limitation, the placement of corrective advertising and providing written notice to the public.

q.    Entry of an order for any further relief as the Court may deem just and proper.

DATED: June 3, 2025.                Respectfully submitted,

STEPHEN M. GAFFIGAN, P.A.

By: **Stephen M. Gaffigan**
Stephen M. Gaffigan (Fla. Bar No. 025844)
Virgilio Gigante (Fla. Bar No. 082635)
T. Raquel Wiborg-Rodriguez (Fla. Bar No. 103372)
Mallory R. Denzl (Fla. Bar No. 1050351)
401 East Las Olas Blvd., Suite 130-453
Ft. Lauderdale, Florida 33301
Telephone: (954) 767-4819
E-mail: Stephen@smgpa.cloud
E-mail: Leo@smgpa.cloud
E-mail: Raquel@smgpa.cloud
E-mail: MalloryR@smgpa.cloud

Attorneys for Plaintiff, FANATICS, LLC

**SCHEDULE "A"**
<u>**DEFENDANT'S SUBJECT DOMAIN NAME**</u>

| Defendant / Subject Domain Name |
|---|
| fanaticity.com |